IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDREW L. BOOTHE, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:12-CV-5127-D |
| VS. § | |
| § | |
| CAROLYN W. COLVIN, ACTING § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION

Plaintiff Andrew L. Boothe ("Boothe") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

In 2009 Boothe applied for a period of disability, disability insurance benefits, and supplemental social security income, alleging that he has been disabled since February 2009. His claim was denied initially, and then again upon reconsideration. He requested a hearing before an Administrative Law Judge ("ALJ"), which was held in December 2010.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a)(4) (2013) and concluded as follows: (1) Boothe has not engaged in substantial gainful activity since February 2009; (2) he has severe impairments of heel bursitis and

Schizotypal Personality Disorder ("SPD"); (3) he does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) he has the residual functional capacity ("RFC") to learn, understand, remember, and carry out simple instructions and tasks, to use judgment in making simple work-related decisions, respond and relate appropriately to others, such as supervisors or coworkers, to maintain attention and concentration for at least two-hour intervals, and to adapt to and deal with simple changes in work settings and environments, and he has no exertional, manipulative, visual, communicative, or environmental limitations; and (5) he is capable of performing past relevant work as a shop helper and general laborer. The ALJ therefore found that Boothe had "not been under a disability, as defined in the Social Security Act, before or after February 1, 2009, through the date of the decision." R. 19. The Appeals Council denied Boothe's request for review, making the ALJ's decision the final decision of the Commissioner.

Boothe seeks judicial review of the Commissioner's decision, arguing that there were errors at multiple steps of the five-step analysis. He argues that the ALJ improperly failed to consider his severe and non-severe impairments and their resulting functional limitations, and did not properly evaluate medical opinion evidence when constructing Boothe's RFC.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted). "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). "If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)).

When determining the propriety of a decision of "not disabled," this court's function

is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Boothe contends that the ALJ failed to properly evaluate medical opinion evidence when determining his RFC. His argument appears to be two-fold. First, he contends that the ALJ did not give sufficient weight to the opinions of Robert L. Mims, M.D. ("Dr. Mims"), the treating physician, and instead gave undue weight to the state consulting examiners. Second, he contends that, in rejecting Dr. Mims's evidence, the ALJ erred by not conducting a detailed analysis of the 20 C.F.R. § 404.1527(c)(2) factors.

A

Boothe's first argument focuses on the ALJ's finding that Boothe is not disabled. He maintains that the ALJ's findings are contrary to Dr. Mims's observation that each session with Boothe revealed further levels of dysfunction, and his finding that Boothe's current mental status renders him disabled, as well as the findings of Leilani Oana, Ph.D. ("Dr. Oana"), a clinical psychologist, that Boothe may be capable of limited employment with psychological and medical treatment. Therefore, Boothe contends the ALJ was not entitled to adopt the opinions of the state consulting examiners that Boothe can perform simple work.

The ALJ did not err in rejecting the finding that Boothe is not disabled. The ALJ properly concluded that he need not give weight to Dr. Mims's opinion that Boothe is disabled, because disability is a legal conclusion reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d) (2013); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The same reasoning applies to Dr. Oana's disability finding, although her conclusion is not in tension with the RFC determined by the ALJ, as long as Boothe continues receiving medical and psychological treatment.

Nor did the ALJ err in giving more weight to the state consulting examiners than to Dr. Mims's conclusions. An evaluation by the claimant's treating physician should be accorded great weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(c)(2). But a treating physician's opinion "may be assigned little or no weight when good cause is shown." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000) (citing

*Greenspan*, 38 F.3d at 237). There is good cause to assign little or no weight when "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted)).

The record supports the ALJ's finding that Boothe is not disabled. Boothe was employed as a scrap metal binder before being laid off due to a slowdown in work, and he testified that he tried to look for work for a few months after being laid off. Dr. Oana found that Boothe scored a 30 out of 30 on the mini-mental status exam, showed evidence of circumstantial thinking and abstract thinking, had good concentration, and had an IQ score between low-average and average. Although a test showed that he performed "low" in sentence comprehension and below average in reading composite, he was average in word reading, spelling, and math computation. Dr. Oana also found that Boothe had a Global Assessment of Functioning ("GAF") score of 60, which indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning, and, notably, is the borderline score for having only mild difficulty. Based on this record, Michelle Chappuis, Ph.D. ("Dr. Chappuis"), a state psychologist, found that Boothe would have only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Charles Lankford, PhD. ("Dr. Lankford"), another state consulting psychologist, affirmed these findings. The

fact that Dr. Chappuis did not have an opportunity to review Dr. Mims's treatment notes did not prevent the ALJ from relying on Dr. Chappuis' opinion, because an ALJ is to "evaluate the degree to which [non-examining source] opinions consider all of the pertinent evidence[.]" 20 C.F.R. § 404.1527(c)(3). Although the ALJ must be cognizant of what a non-examiner has not reviewed, the ALJ is not precluded from giving great weight to a non-examiner's conclusions. *See Carter v. Astrue*, 886 F.Supp.2d 1093, 1111-12 (N.D. Iowa 2012) (holding that consultant's lack of access to all treatment records did not prevent ALJ from assigning significant weight to consultant's assessment if ALJ conducted independent review of all evidence, including records consultant did not consider). And in this case, after examining the treatment notes from Dr. Mims and all the other evidence, the ALJ concluded that these notes did not provide "any new and material information that would alter any findings about the claimant's mental residual functional capacity." R. 22. In his reply brief, Boothe challenges the Commissioner's reliance on the opinion of Dr. Lankford, contending that, when he made his assessment in September 2009, he was relying on evidence from May 20, 2009. Boothe posits that Dr. Mims found that Boothe's condition had changed when he evaluated him on October 1, 2009, and he contends that Dr. Oana's May 20, 2009[1] evaluation cannot be deemed a complete picture of Boothe's mental impairments and limitations during the entire period at issue. But the question on appeal is whether the ALJ's decision is in this respect supported by substantial evidence. For the reasons explained, the court holds that it

---

[1] The record appears to show that Dr. Oana examined Boothe on June 3, 2009. This difference in dates is immaterial.

is.

B

Boothe also contends that the ALJ erred by failing to properly evaluate the findings of Dr. Mims, a treating physician, under the 20 C.F.R. § 404.1527(c) factors. An ALJ need not consider each of the factors when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (per curiam) (quoting *Newton*, 209 F.3d at 458). Here, many of Dr. Mims's opinions are controverted by Dr. Oana, an examining psychologist. *See Benton ex rel. Benton v. Astrue*, 2012 WL 5451819, at *5 (N.D. Tex. Nov. 8, 2012) (Fitzwater, C.J.) (holding that consulting physician who examines plaintiff once is a consulting examiner whose opinions constitute reliable evidence that may satisfy *Newton*). Although clinical psychologists are not physicians, they may properly be considered as an examining source for purposes of determining whether a *Newton* analysis is necessary. *See Sibley v. Astrue*, 2011 WL 7274895, at *10 (E.D. La. Dec. 15, 2011) (holding that ALJ did not err in failing to perform *Newton* analysis where reliable evidence from examining psychologist controverted treating physician's opinion), *rec. adopted*, 2012 WL 441137, at *1 (E.D. La. Feb. 10, 2012); *Naquin v. Astrue*, 2009 WL 928502, at *12 (E.D. La. Apr. 3, 2009) (same).[2] For example, Dr. Oana found that Boothe

---

[2]The conclusion that reliable evidence from an examining psychologist is sufficient to excuse an ALJ from analyzing the § 404.1527(c) factors is not inconsistent with *Newton*'s statement that such reliable evidence must come "from a treating or examining *physician*." *Newton*, 209 F.3d at 453 (emphasis added). *Newton* did not involve psychologists, and it

- 9 -

had adequate hygiene and proper grooming, whereas Dr. Mims found that he demonstrated poor attention to appearance; Dr. Oana found that Boothe had moderate (bordering on mild) difficulty in social, occupational, or school functioning, whereas Dr. Mims found that Boothe's "social judgment and interaction [was] grossly impaired," R. 291; Dr. Oana found that Boothe scored a perfect 30 out of 30 on the mini-mental status exam, whereas Dr. Mims found that he scored only an 18; and Dr. Oana found that Boothe showed evidence of circumstantial and abstract thinking, whereas Dr. Mims found that he had "difficulties with his thought process." R. 22. Moreover, some of Dr. Mims's conclusions are contrary to Boothe's treatment record. Dr. Mims concluded that Boothe was disabled since childhood, and he stated in a report that he did "not see any way [Boothe] could deal with a supervisor or a boss . . . . He has never been able [to] hold a position as a regular employee in the competitive workplace, according to his brother." R. 291. Yet the record shows that Boothe has a record of gainful employment spanning over two decades. *Cf. Berry v. Astrue*, 2013 WL 524331, at *18-19 (N.D. Tex. Jan. 25, 2013) (Ramirez, J.) (The ALJ "could also reject

---

appears that the reference to a "physician" was short-hand for an acceptable medical source. Moreover, reading the term "physician" literally would place this requirement from *Newton* in tension with the regulations, which consider a psychologist to be an acceptable medical source. *See* 20 C.F.R. § 404.1513 (2013) (defining "acceptable medical source" as including "licensed or certified psychologists"). And such a reading could compel the conclusion that *Newton* does not apply to treating psychologists, *see Newton*, 209 F.3d at 453 (stating that "an ALJ may reject the opinion of the treating *physician* only if the ALJ" addresses the regulatory factors) (emphasis added), a result that is inconsistent with at least one decision of this court. *See Yearout v. Astrue*, 2010 WL 4860784, at *10 (N.D. Tex. Oct. 26, 2010) (Ramirez, J.) (holding that ALJ erred in not considering § 404.1527(c) factors where there was no first-hand evidence contradicting treating psychologist's opinion), *rec. adopted*, 2010 WL 4929108 (N.D. Tex. Nov. 30, 2010) (Lindsay, J.).

[the treating physician's] opinions about [petitioner's] allegedly disabling back pain without performing a factor by factor analysis because there was competing first-hand medical evidence, including [the treating physician's] own treatment record, that supported a contrary conclusion." (citation omitted)).  For these reasons, the ALJ was not required to perform a *Newton* analysis of the 20 C.F.R. § 404.1527(c) factors.[3]

IV

Boothe also contends that the ALJ erred in finding that certain impairments were not "severe" and therefore were not appropriately considered in determining Boothe's RFC.

A

Boothe maintains that Dr. Mims diagnosed him with major depressive disorder, Asperger's disorder, pervasive developmental disorder, and borderline intellectual functioning, yet the ALJ did not consider these impairments to be severe and did not indicate whether these conditions affected Boothe's ability to work.  Boothe posits that because the ALJ did not consider these impairments and any associated vocational restrictions, the RFC determination is not supported by substantial evidence.

The Commissioner responds that the ALJ in fact considered Dr. Mims's diagnoses and all impairments when making his findings, as reflected in the ALJ's detailed discussion of Dr. Mims's treatment notes.  The Commissioner cites the ALJ's discussion of Dr. Mims's diagnosis and his statements that he considered all impairments, including non-severe

---

[3]Given its disposition of this issue, the court need not address the Commissioner's argument that the ALJ in fact addressed the *Newton* factors.

impairments, in making his RFC assessment.

B

Boothe appears to be making two arguments: first, that his mental limitations other than SPD should be considered severe; and, second, that the ALJ did not consider these impairments in determining the RFC. But assuming *arguendo* that the ALJ erred by not finding based on Dr. Mims's diagnoses that Boothe's impairments are severe, the error is harmless because the ALJ considered these conditions in his RFC analysis. *See Gibbons v. Colvin*, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (Ramirez, J.) (holding that error under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), potentially causing ALJ not to recognize certain impairments as severe at step two, was harmless because ALJ considered the impairments in the RFC); *Reliford v. Colvin*, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *see also Herrera v. Comm'r*, 406 Fed. Appx. 899, 903 (5th Cir. Dec. 30, 2010) (per curiam) (holding that "ALJ's failure to assess the severity of [a claimant's] impairments at step two is not a basis for remand" where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, "retained the residual functional capacity to do other work."). The ALJ's RFC analysis discusses in detail Dr. Mims's treatment and opinions regarding Boothe's mental status, and the ALJ stated that "[i]n making [his] decisions and findings, [he] reviewed, considered, evaluated, analyzed, and weighed all of the claimant's complaints and symptoms[.]" R. 23. Thus the ALJ

considered these non-severe impairments and decided that they were not supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (holding that ALJ is not required to incorporate limitations in RFC that she did not find to be supported in the record). This is not a case where the ALJ failed to consider impairments at all. *Cf. Hall v. Astrue*, 2012 WL 4167637, at *13 (N.D. Tex. Sept. 20, 2012) (Ramirez, J.) (holding that *Stone* error was not harmless where ALJ did not address or consider effects of one of claimant's physical impairments on his ability to work at any step of sequential evaluation process). Assuming *arguendo* that the ALJ erred in not finding at step two that certain of Boothe's impairments are not severe, the error is harmless.

V

Boothe also maintains that the ALJ failed to consider functional limitations resulting from the impairments that the ALJ found at step two to be severe.

A

Boothe contends that the ALJ erred in not finding any exertional, manipulative, visual, communicative, or environmental limitations in the RFC, considering that Boothe's heel bursitis is a severe impairment. The court disagrees. The ALJ examined the treatment notes and found that Boothe's bursitis did not affect his ability to ambulate effectively. The state consultants concluded upon review of his records that he could physically perform a full range of work. Boothe does not cite any evidence suggesting that he is unable to perform certain functions; he relies solely on the fact that the ALJ found his heel bursitis to be a severe impairment. But "an impairment can be considered as not severe only if it is a slight

- 13 -

abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (internal quotation marks and citation omitted). Because the ALJ determines whether an impairment is severe without regard to the individual's age, education, or work experience, finding that an impairment is severe does not of itself mean that the impairment affects the claimant's ability to work. Thus there is no inherent contradiction in finding that Boothe's heel bursitis is severe at step two and also finding that he has no exertional limitations on working. Given the state consultants' opinions and Boothe's failure to point to any contrary evidence, the court concludes that the ALJ's findings regarding the exertional portion of the RFC are supported by substantial evidence.

B

Boothe also contends that the ALJ erred in indicating that Boothe has only mild difficulties in social functioning because this is inconsistent with the observations of Drs. Oana and Mims and the ALJ's determination that his SPD is a severe impairment. Because Boothe's objection is in substance that the ALJ improperly weighed the medical evidence and that there is no substantial evidence for the ALJ to have found that Boothe has only mild difficulties in social functioning, the court concludes for the reasons stated above that there is no reversible error.

And to the extent Boothe is arguing purely that the ALJ contradicted himself, the court disagrees. Boothe's brief quotes 20 C.F.R. § 404.1520a(d)(1), which states that, "[i]f we rate

- 14 -

the degree of your limitation in the first three functional areas [listed in § 404.1520a(c)(3)] as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe[.]" He argues that, "by indicating that [Boothe] has only mild difficulties in social functioning, the ALJ has indicated that [Boothe] has no severe limitations in this regard." P. Br. 9. This argument overlooks that the ALJ found Boothe had moderate difficulties in the third functional area—concentration, persistence, or pace—therefore rendering inapplicable the general rule expressed in § 404.1520a(d)(1).

Boothe also maintains that the ALJ failed to consider Boothe's deficits in visual scanning and judgment, as well as specific testing performed by Dr. Oana showing Boothe's working memory and verbal comprehension are in the 21st percentile and his processing speed is at the 4th percentile. The ALJ, however, discussed in detail Dr. Oana's findings, including multiple other tests and observations that covered the same ground—e.g., a test measuring sentence comprehension, reading, and math skills, and observations about Boothe's thinking, memory, and judgment. The ALJ also stated that he "reviewed, considered, evaluated, analyzed, and weighed all of the claimant's complaints and symptoms[.]" R. 23. The ALJ was not required to list in his decision every fact from the voluminous record that may favor the claimant. The court holds that the ALJ considered this evidence and that his pertinent findings are supported by substantial evidence.

* * *

For the reasons explained, the Commissioner's decision is AFFIRMED.

July 23, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE